## LUCY M. CHENEY *vs.* ABIEL H. PEASE & others.

B. owning, on the west side of a road, a tract of land on which stood his house and barn, conveyed by deed of warranty to L. C. a lot of it, south of the house and barn, "together with the privilege of taking water from my aqueduct" to the granted premises. The aqueduct used by B., beginning at a spring on land of H. east of the road, ran through H.'s land, and then through land of F., to the road, which it crossed; then entered B.'s tract at a point south of his house; continued westerly to an outlet which supplied the house; then ran to another outlet at the barn; and was laid in the lands of H. and of F. under oral licenses, for which no consideration was paid. From the outlet at the barn L. C. drew water. After B.'s conveyance to L. C., H., whose land reached to the road at a point north of the land of F., conveyed to B. the right to take water from that spring, or another near it, "with the same sufficiency of water as he now has."

Cheney *v.* Pease & others.

and " carry the same by aqueduct in a direct line through H.'s land to B.'s prem-
ises, as B. now does, or through H.'s land the whole distance to the road." B. then
conveyed to R. his whole tract of land, with " all the right of conducting water from a
spring which I have obtained from H.," excepting however expressly from this convey-
ance, the lot included in his deed to L. C., and " the privileges therein contained." R.
divided the tract into lots, and sold one of them, including B.'s former barn, to R. C.;
and sold to P. another lot, (including B.'s former house and the outlet which supplied the
house with water,) together with all B.'s right of conducting water from a spring on the
land of H., subject, however, to the right which B. conveyed to L. C. P. then sold the
house lot to X., without any right in the springs or aqueduct. F., after all this, sold his
land; and his grantee revoked the license under which the aqueduct was laid through it,
and dug up that portion of the pipes. R. C. and L. C. thereupon laid a new aqueduct
from the spring, over a new route, which ran wholly through the land of H. to the
road, which it crossed at a point north of the house lot, then entered P.'s land, and, turn-
ing, ran southerly and across the house lot to the original outlet at R. C.'s barn. In
a suit in equity by L. C. to restrain P. from digging up the portion of this new aque-
duct which crossed P.'s land, " assuming that B.'s deed conveyed to L. C. an interest in
the spring itself and in the aqueduct by which the water was conducted to the premises
of B., so as to entitle L. C. to maintain and keep the aqueduct in repair in case the gen-
eral owner should fail to do so, and to have her remedy against any one who should
interrupt her in doing this," *Held,* that her right in the spring, and in the conducting of
water from the spring, was only a right to share with her grantor, or those having his
estate, in the limited quantity of water which was conducted from the spring in his aque-
duct; and did not include a right to lay a new aqueduct to the spring for her separate use.
*Held, also,* that for any failure of her grantor's title in the spring, or in his aqueduct
her remedy was by action on the covenants in his deed.

BILL IN EQUITY for an injunction on the defendant Pease
against digging up an aqueduct which the plaintiff, Lucy Maria
Cheney, laid across his land in Lee, and to enforce the plaintiff's
right to maintain the aqueduct as against the various proprietors
of lands through which it was laid, who were all made defend
ants. Issue being joined on their answers, the case was referred
to a master to hear the parties and report the evidence; was
reserved, by the chief justice, on the bill, answers and master's
report, for the determination of the full court; and is stated in
the opinion.

*A. J. Waterman,* for the plaintiff.

*M. Wilcox,* for the respondents.

WELLS, J. The pleadings and other papers in this case are
voluminous; and the facts reported by the master are somewhat
complicated. The following statement contains all that is ma
terial to the questions to be determined.

In November 1852 the plaintiff purchased a house lot from

Horace Blood, whose deed of warranty contained this clause " together with the privilege of taking spring water from my aqueduct to said premises." This house lot was part of a tract of twenty acres then owned by Blood upon the west side of the highway. His own house was upon the same tract, at some distance north from the plaintiff's lot. The aqueduct then in use led from a spring of water, upon land of Ransom Hinman, at considerable distance from the road, upon the opposite side; and ran part of the way in land of said Hinman, and partly in land of one Fuller; thence across the road to a point near the south side of Blood's house, and thence to a barn further to the south and west. The aqueduct, (of logs, with a bore of one and a half inch,) had been laid in 1843 " by permission of and license from said Hinman and Fuller, without any writing and without any payment of any consideration." The land of Fuller extended, upon the east side of the road, northerly to a point considerably beyond the house of Blood, and north of the south line of land, part of Blood's twenty acre tract, now owned by the defendant Pease. Opposite the northerly portion of Blood's tract the Hinman land bounded upon the road.

In 1853 Hinman conveyed to Blood the right " to take water from the spring on our land where he now takes it, or from a spring a few feet north of it, with the same sufficiency of water as he now has, and carry the same by aqueduct, in logs or lead pipe, under ground in a direct line through our land to his premises as he now does, or through our land the whole distance to the county road, provided he does no unwarrantable damage by so conducting it, and keep said spring in a good condition for us to use at all times."

Blood subsequently in 1853 conveyed to Hall and Rogers the whole tract, " reserving and excepting from the above one half an acre of land whicn I have heretofore deeded to Maria Cheney, the wife of Jesse Cheney, and the privileges therein contained." The deed conveyed " also all my right, grant, permission and privilege of carrying and conducting water from a spring or springs which I have obtained from Ransom Hinman, the terms and restrictions as contained in their written instrument to me according to the tenor thereof."

Several portions of the tract have been conveyed to various parties, and the present owners are made parties to the bill. In 1864, Hall and Rogers conveyed eight acres, being the northerly part of the tract, to the defendant Pease; also " all the right, grant, permission and privilege of carrying and conducting water from a spring or springs of water on land now or late of Ransom Hinman and his wife, according to the terms of a deed from Horace Blood;" " subject to the right which said Horace Blood conveyed to the wife of Jesse Cheney." Pease had been in possession since 1855 under a contract for the purchase. This conveyance included the dwelling-house occupied by Blood when he owned the land, and the place where he took water from the aqueduct for the use of his house; but did not include the barn and the place where water was taken out for the barn, and from which the plaintiff took water in 1863 and until the interruption in 1866. The lot upon which this barn and penstock were is now owned by R. B. Cheney; having been conveyed by Hall and Rogers previous to their deed to Pease. Said R. B. Cheney has acted in conjunction with the plaintiff in asserting their right to take the water of the spring and conduct it to their several premises. Pease afterwards sold the Blood house and house lot to one Cobb; so that his south line is now a few rods north of that house. In his deed to Cobb he reserved and excepted all the rights, grant and privilege which had been and were then connected with said house lot in said springs and in the taking, carrying and conducting water therefrom to and upon said house lot.

In 1866, the portion of the aqueduct across the Fuller lot having been interrupted and taken up by Fuller's grantee, and permission to maintain it there having been refused, the plaintiff and R. B. Cheney attempted to conduct the water by a new route leading from the spring to the highway wholly over the Hinman land, (which was then subdivided and held by other parties,) thence across the highway upon the land of Pease, part of the Blood tract, and thence across his land and that of Cobb to the original outlet, upon Cheney's lot. For the interruption of the aqueduct, thus newly `aid, and to enforce the right to

lay and maintain it upon this substituted route, this bill is brought.

The plaintiff contends that Blood's deed conveyed to her an interest in the spring itself, and in the aqueduct by which the water was conducted to the premises of Blood, so as to entitle her to maintain and keep the aqueduct in repair, in case the general owner should fail to do so; and to have her remedy against any one who should interrupt her in doing this. For the purposes of the present inquiry we may assume that the words of the deed would be sufficient to give her such rights.

In construing such a grant there are two rights, of different character, to be considered; first, the right to take the water of the spring; second, the aqueduct, or means of conducting it. As to the first, the grant being of a right to take water from an aqueduct in actual existence and use at the time, the capacity of which was limited to a certain volume, the right of the grantee must be construed with reference to that limit. Within that limit it is to be exercised only as a right in common with the grantor. It is not a general right in the spring; but a right to share in a limited supply of water, brought from the spring by an aqueduct. Second, as to the means of conducting the water; by the terms of the deed the grantee is to take it from the grantor's aqueduct. If therefore the plaintiff's right reaches to the spring itself, it is only through the common aqueduct. If she may maintain and keep in repair an aqueduct from the spring to the land which was Blood's, it must be that aqueduct in which the common right exists. Her grant cannot be so extended as to give her a right, independently of the grantor and those taking his estate, to lay a new aqueduct for her own separate use, and to take water from the spring separately.

If the grantor's title prove defective, or if his right to main tain the line of his aqueduct be defeated, the grantee may have a remedy upon the covenants in her deed. But such failure would not entitle her to transfer the exercise and enjoyment of the rights, for which she contracted, to another locality where her grantor might happen to have a better title. If Blood had not succeeded in procuring a title to the spring, it would not be

supposed for a moment that the plaintiff could supply herself from any other spring which she could find upon land that Blood did own. The failure of Blood's right to maintain his aqueduct stands upon the same footing. The plaintiff's grant of a right to take water from Blood's aqueduct does not entitle her, upon failure of that aqueduct from defective title, to establish another wherever Blood had title or a right to maintain one, at the date of his grant, and to take water in like manner from that. Such substitution can be effected only by the concurrence and adoption of all parties in interest at the time it is made. It can be derived as a right neither from the grant, nor from the covenants of warranty. It does not aid the plaintiff's claim to consider the privilege which Blood enjoyed, or the right which he afterwards acquired, as appurtenant to the whole tract, and therefore capable of passing with each separate parcel, upon subdivision of the tract. The owner may nevertheless convey parcels without any share in the easement; or with such limited and restricted right as he sees fit. The designation of a special and limited right, in the plaintiff's deed from Blood, is an exclusion of the larger, general right.

The plaintiff relies upon the fact that, after Blood's deed to her, he procured from Hinman a grant of the right to cross that land by either route ; and claims the right to avail herself of this subsequent deed by way of estoppel; that is, that Blood having failed to secure a right to conduct the water by the original course, and having acquired a right to conduct it by another course, the plaintiff's grant may attach to that right, as the only one which can be used. But such is not the operation of an estoppel. It does not extend the terms of a grant, nor make it apply to new subject matter. It prevents the party from setting up the title subsequently acquired against his previous deed. Having acquired title afterwards, his deed estops him from denying that he had the same title when giving it. But the estoppel gives to the deed no other or greater effect than it would have had if the grantor had held at the time all the title which he afterwards acquired. The extent of the plaintiff's rights must be determined by the terms of her own deed, and

not by the extent of right which her grantor then had or after-wards acquired. That deed, as we have already seen, conveyed no general right, either in the spring or to cross intervening lands. At most it could only confer a right to maintain the aqueduct from which it gave a right to take the water.

The plaintiff cannot therefore maintain her bill against McDer-mott and Foster, grantees under Hinman; and this would be sufficient ground for dismissing it as to all, because a right to cross land of Pease would be unavailing to her, for the enjoy-ment of her right to the water, without a right also to cross the lands of McDermott and Foster. But the plaintiff equally fails to show any right to cross the land of Pease. The considera-tions already adverted to are sufficient to show that no such right results from her original grant. The conveyance to Pease of all rights which Blood had in the aqueduct, spring and privi-lege of conducting the water, and the reservation therefrom of the rights conveyed to the plaintiff, did not operate to subject Pease's land to any burdens except such as were imposed by the terms of the grant to the plaintiff. That grant imposed no burden upon the land retained by Blood, beyond the main-tenance of the aqueduct as it then was, and the right to con-duct water from it, over intervening land, to the plaintiff's lot. It imposed no burden then, in her favor, upon land lying north of Blood's house lot; and the reservation of her right, in the deeds under which Pease claims, cannot be held to extend that right beyond what it was before. *Bill dismissed, with costs.*